[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 144.]

THE STATE EX REL. VALORE *v.* SUMMIT COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Valore v. Summit Cty. Bd. of Elections*, 1999-Ohio-317.]

*Elections—Two-year mayoral residency requirement of Twinsburg Charter—Mandamus sought to compel board of elections to certify candidate's name on ballot—Claim barred by laches—Writ denied.*

(No. 99-1722—Submitted October 7, 1999—Decided October 8, 1999—Opinion announced October 15, 1999.*)

IN MANDAMUS.

———————————

{¶ 1} Relator, Gregory A. Valore, filed a petition to be a candidate for the Mayor of the Twinsburg, Ohio, at the November 2, 1999 general election. Section 4.02(B), Article IV of the Twinsburg Charter requires that the mayor "shall have lived within the corporate limits of the City for a period of not less than two (2) years immediately prior to the date of his election and during his term of office, shall continue to be a resident of the City."

{¶ 2} The staff of respondent Summit County Board of Elections subsequently discovered that Valore had been registered to vote in Twinsburg only since July 30, 1999. Because of Valore's recent registration, a board employee called Valore at 9:00 on August 23 and requested that he provide proof of residency by 9:00 on August 24. Valore left a telephone message informing the board that he would provide proof of residency but probably not by 9:00.

{¶ 3} The board certified Valore's petition conditioned on his providing proof of residency pursuant to the Twinsburg Charter by 4:30 P.M. on August 24. After a board employee informed Valore that he must provide proof of his residency by 4:30, Valore faxed copies of leases establishing that he resided in Twinsburg beginning on December 1, 1997 and through the current date. When a board

* Reporter's Note: On October 8, 1999, the court denied the writ of mandamus "consistent with the opinion to follow." The opinion to follow is announced today.

employee notified Valore on August 24 that his leases did not prove that he met the two-year mayoral residency requirement because the leases covered a period that was one month less than the required period, Valore stated that he had lived with his girlfriend in Twinsburg before December 1, 1997 and that he could supply affidavits to support this fact. The board employee as well as the board's deputy director, respondent Yolanda Walker, explained the board's practice of not accepting affidavits to establish proof of residency. The board has an unwritten policy of requiring documentation, *i.e.*, a mortgage, lease agreement, or utility bills in the candidate's name, to establish proof of residency.

{¶ 4} On August 25 and 26, Walker informed Valore that the next board meeting was scheduled for August 31. Walker also advised Valore he could protest the board's decision not to certify his candidacy for the November 1999 ballot, but that he would still have to provide proof of residency to the board for it to reconsider. On August 30, instead of submitting a written protest, Valore delivered affidavits of himself and his fiancée, Loren Cross, to the board. In these affidavits, Valore and Cross stated that Valore had lived at Cross's Twinsburg home from September 1, 1997 through the end of November 1997, with the two sharing household expenses equally during that time. Valore also submitted utility bills listed in Cross's name for her home during that period.

{¶ 5} At the August 31 board meeting, the board reviewed the affidavits and utility bills and found them insufficient to establish Valore's residency in Twinsburg beginning in November 1997. At the meeting, the board members noted past candidate-residency issues and the board's normal evidentiary standard requiring leases, mortgages, utility bills, or proof of receipt of mail at a city residence in order to establish residency. By letter dated September 1, the board notified Valore of its decision. No protest was ever filed against Valore's candidacy.

2

**{¶ 6}** On September 17, *i.e.*, seventeen days after the board's decision at its public meeting and sixteen days after the board had notified him in writing of its decision not to certify his name on the ballot, Valore filed this action for a writ of mandamus to compel respondents, the board and its chairman, director, and members, to certify Valore's candidacy for the office of Mayor of Twinsburg on the November 2 election ballot.

**{¶ 7}** This cause is now before the court for our determination under S.Ct.Prac.R. X(9).

—————————

*Law Office of Georg Abakumov* and *Peter F. Shenyey*, for relator.

*Michael T. Callahan*, Summit County Prosecuting Attorney, and *William E. Schultz*, Assistant Prosecuting Attorney, for respondents.

—————————

**Per Curiam.**

**{¶ 8}** Valore asserts that he is entitled to a writ of mandamus to compel the board to certify his name on the November 2 election ballot. In extraordinary actions challenging the decision of a board of elections, the applicable standard is whether the board engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or pertinent law. *State ex rel. Lynch v. Cuyahoga Cty. Bd. of Elections* (1997), 80 Ohio St.3d 341, 342, 686 N.E.2d 498, 499. Valore claims that the board abused its discretion and acted in clear disregard of Section 4.02(B) of the Twinsburg Charter by ruling that he did not meet the charter's two-year residency requirement.

**{¶ 9}** We need not address the merits of Valore's claim because it is barred by laches. " 'Extreme diligence and promptness are required in election-related matters.' " *State ex rel. Manos v. Delaware Cty. Bd. of Elections* (1998), 83 Ohio St.3d 562, 563, 701 N.E.2d 371, 372, quoting *In re Contested Election of November 2, 1993* (1995), 72 Ohio St.3d 411, 413, 650 N.E.2d 859, 862. Valore delayed

approximately sixteen days from the board's decision not to certify his candidacy on the November 2 election ballot until he filed this mandamus action on September 17. There is no excuse or justification for this delay. The delay was also prejudicial because by the time the expedited briefing schedule set forth in S.Ct.Prac.R. X(9) had been completed in this case, the board of elections could not have made changes in the absentee ballots, which had to be printed and ready for use by September 28, the thirty-fifth day before the election. R.C. 3509.01. *State ex rel. Ascani v. Stark Cty. Bd. of Elections* (1998), 83 Ohio St.3d 490, 493-494, 700 N.E.2d 1234, 1237; *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 45, 48-49, 600 N.E.2d 656, 659.

{¶ 10} Based on the foregoing, even assuming, *arguendo*, that Valore's contention has merit, he is not entitled to extraordinary relief in mandamus because of laches. See *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 143, 145-146, 656 N.E.2d 1277, 1279, and *Paschal v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 141, 142, 656 N.E.2d 1276, 1277, where we unanimously held that delays of seventeen and nine days, respectively, in filing expedited election cases following adverse board of elections decisions constituted laches precluding a consideration of the merits of the claims. Accordingly, we deny the writ based on laches.

*Writ denied.*

MOYER, C.J., F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., concurs in judgment only.

RESNICK, J., concurs in judgment.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 11} I dissent from the majority's holding that laches applies in this case. The majority, in support of its holding, cites *State ex rel. Polo v. Cuyahoga Cty.*

*Bd. of Elections* (1995), 74 Ohio St.3d 143, 656 N.E.2d 1277, and *Paschal v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 141, 656 N.E.2d 1276, where delays of seventeen and nine days, respectively, in filing expedited election cases were found by this court to constitute laches. However, those cases were filed on October 6 and October 11, respectively. This case was filed on September 17, 1999. This case lacks the immediacy to election day that was apparent in the above-cited cases.

{¶ 12} I would thus consider the case on its merits and grant the petitioner's writ. I would find that the two affidavits claiming that Gregory Valore lived in Twinsburg during the month in question were sufficient evidence to establish residency, especially since there was no contrary evidence presented.

––––––––––––––––––